original

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

JOSHUE DEJESUS                              :

                    Petitioner,             :

            v.                              :        PRISON NO. 09A4840

                                                     CASE NO.
ADA PEREZ                                   :

                    Respondent,             :

----------------------------------------X



MEMORANDUM OF LAW IN SUPPORT OF JOSHUE DEJESUS
PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT   OF
HABEAS   CORPUS  BY PRISONER IN  STATE CUSTODY

# TABLE OF CONTENT

TABLE OF AUTHORITIES................................................i

..................................................................1

QUESTION PRESENTED.................................................

..................................................................1

PRELIMINARY STATEMENT.............................................

..................................................................

GROUNDS RAISED:

GROUND ONE:

PETITIONER WAS DENIED HIS UNITED STATES 6TH AND 14TH
CONSTITUTIONAL AMENDMENT RIGHT TO CONFRONTATION AND TO
A FAIR TRIAL BY EVIDENCE THAT THE POLICE HAD IDENTIFIED
PETITIONER AS A "SPECIFIC SUSPECT" HOURS BEFORE HE WAS
IDENTIFIED BY PROSECUTION WITNESS CARRASCO WAS
INADMISSIBLE, EVEN AS "BACKGROUND" EVIDENCE, BECAUSE
IT CLEARLY SIGNALED THAT A NON-TESTIFYING DECLARANT HAD
IMPLICATED PETITIONER, IN VIOLATION OF HIS RIGHT TO
CONFRONT THIS ACCUSER, AND WAS PARTICULARYL PREJUDICIAL .........2
IN THIS ONE WITNESS IDENTIFICATION CASE.................

.................................................................10

CONCLUSION.......................................................

.................................................................

EXHIBIT (A)

APPELLATE DIVISION 2nd DEPARTMENT DECISION....................A

.................................................................

EXHIBIT (B)

NEW YORK STATE COURT OF APPEAL DECISION.......................B

.................................................................

# TABLE OF AUTHORITIES

## FEDERAL CASES:

1. BARBER V. PAGE, 390 U.S. 719.....................................10

2. CHAMBERS V. MISSISSIPPI, 410 U.S. 284...........................10

3. CRAWFORD V. WASHINGTON 541 U.S. 36..............................10

4. MARYLAND V. CRAIG, 497 U.S. 836.................................09

5. MENDEZ V. GRAHAM 2012 WL 6594456................................09


## STATE CASES:

6. PEOPLE V. GARCIA, 25 N.Y.3d 77..................................07


## FEDERAL STATUTE:

7. 28 U.S.C.A. § 2254(d)(1).......................................07

WHETHER PETITIONER WAS DENIED HIS UNITED STATES
6TH AND 14TH CONSTITUTIONAL AMENDMENT RIGHT TO
CONFRONTATION AND TO A FAIR TRIAL BY EVIDENCE
THAT THE POLICE HAD IDENTIFIED PETITIONER AS A
"SPECIFIC SUSPECT" HOURS BEFORE HE WAS IDENTIFIED
BY PROSECUTION WITNESS CARRASCO WAS INADMISSIBLE,
EVEN AS "BACKGROUND" EVIDENCE, BECAUSE IT CLEARLY
SIGNALED THAT A NON-TESTIFYING DECLARANT HAD
IMPLICATED PETITIONER, IN VIOLATION OF HIS RIGHT
TO CONFRONT THIS ACCUSER, AND WAS PARTICULARLY
PREJUDICIAL IN THIS ONE WITNESS IDENTIFICATION
CASE.

## PRELIMINARY STATEMENT

Petitioner Joshue Dejesus is filing this Memorandum of Law in
Support of Petition for a Writ of Habeas Corpus. The Writ of Habeas
Corpus and this Memorandum of Law in support for a Writ of Habeas Corpus
has been filed this 28th day of March 2016. Petitioner date of Judgment
of conviction is July 10, 2009, of Murder in the second degree. The date
of sentence is September 16, 2009. The petitioner was sentence to twenty
years to Life. Petitioner appeal the judgment to the Appellate Division
1st. Department. The Appellate Division affirmed this appeal on April
9, 2013. Petitioner appeal the decision of the Appellate Division to
the New York State Court of Appeal and on April 2, 2014; The Court of
Appeal Granted the Leave to Appeal and on March 31, 2015. The Court of
Appeal affirmed the decision of the Appellate Division. The AEDPA of
1996 as contained in 28 U.S.C. § 2254(d) provides in part that a one
year period of limitation shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State
Court became final. This make this petition of a Writ of Habeas Corpus
timely.

## GROUND ONE:

PETITIONER WAS DENIED HIS UNITED STATES 6TH
AND 14TH CONSTITUTIONAL AMENDMENT RIGHT TO
CONFRONTATION AND TO A FAIR TRIAL BY EVIDENCE
THAT THE POLICE HAD IDENTIFIED PETITIONER
AS A "SPECIFIC SUSPECT" HOURS BEFORE HE WAS
IDENTIFIED BY PROSECUTION WITNESS CARRASCO
WAS INADMISSIBLE, WVEN AS "BACKGROUND"
EVIDENCE, BECAUSE IT CLEARLY SIGNALED THAT
A NON-TESTIFYING DECLARANT HAD IMPLICATED
PETITIONER, IN VIOLATION OF HIS RIGHT TO
CONFRONT THIS ACCUSER, AND WAS PARTICULARLY
PREJUDICIAL IN THIS ONE WITNESS
IDENTIFICATION CASE.

(a) Supporting facts:

Petitioner was accused of murder of another young man in Harlem
during the early morning hours of June 9, 2006. Only one person
identified petitioner as the shooter at trial. The witness had only
a fleeting glimpse of the shooter's face, and he had admittedly had
a great deal to drink that night. There was evidence that petitioner
when to Florida soon after the incident, and that he was aware the
police were looking for him. He eventually returned to New York
voluntarily to surrender, without receiving any promises or incentives
to do so. Petitioner and his friend was at a bar on June 9, w006 called
"J.J.". There was also a clique of men called the "White T's" because
they wore white t-shirts; the victim was not a part of the group but
was talking to some of them at one or more time during the night. During
the close of the night, the White T's group was leaving the bar one
of the group member threw some ice hard, against the wall near the
petitioner and his friend. There was only one witness to identify the
petitioner as the shooter, his name was Carrasco. When Carraso left
J.J.'s, "somebody told him don't go toward that way. Something is going
to happen.

Carrasco looked in that direction he saw the victim arguing with someone. Carrasco did not know the person the victim was arguing with but he noticed there was a group of people standing around and in close proximity to the victim as he argued. Carrasco started walking over to his friend, and a man wearing a hoody sweater with the person back in front of Carrasco the man approached the victim and pulled something out of his waistband firing one shot, and then left. Carrasco identified the petitioner as that man. When Carrasco saw the victim after the shooting who was lifting up his shirt and saying to the man "I know where you from and I know where you live". Carrasco called 911, but the operator was asking too many questions so he hung up and got into a van with the victim and some other friend and drove to the hospital. Carrasco saw some people he knew talking to a police officer at the hospital, but he did not make a report. He spoke with officers later that morning and again in the afternoon. He did not identify the shooter, and in fact told the police that he was across the street buying food when he heard a shot. At trial Carrasco testified he did not want to be "a snitch" and that he was "frightened". Around 10:00 pm. that night, however, Carrasco identified the petitioner in a photo array. On November 8, 2006, he made a lineup identification as well. During trial and over overruled objections, the prosecutor elicited from a Detective Mr. Rivera that he identified a specific suspect during the day of June 19, 2006, that the suspect was the petitioner, and that he began looking for the petitioner at 4:00pm. He identified the petitioner as a result of his investigation before speaking to Lenny Carrasco; Counsel's request to approach the bench which was denied.

In response, Detective Rivera immediately started to gather information about the petitioner. He obtained his address and, over objection, stated it. After the second request to approach the bench which also was denied. Detective notified two other police units and interviewed people who had called 911 to report the shooting, including Mr. Carrasco. Rivera first spoke with Carrasco around 7 or 8 o'clok on June 9th. According to Rivera testimony Carrasco was "nervous, not too forthcoming', he gave a description of the shooter: A male Hispanic, wearing a gray hoodie and blue jeans, with "coarse" hair that was long, past the neckline. At the first available recess, after the jury was excused, Counsel complained about Rivera's testimony that he had identified the petitioner as the shooter before speaking to Carrasco. Before trial, the Court had denied the prosecutor's application to adduce that an anonymous caller had implicated the petitioner. The prosecutor had disobeyed the ruling, and deliberately elicited that the petitioner became a suspect before Carrasco identified him. Counsel argued that this testimony was inadmissible hearsay, and violated the petitioner right of confrontation and that the message to the jury that someone other than Carrasco had implicated the petitioner as the shooter. Counsel moved to strike that portion of Rivera's testimony, and to preclude the prosecutor from summing up on it. The prosecutor argued that she had not violated the court's ruling, because she had not specifically elicited that the petitioner had been named by an anonymous caller. The court agreed and without discussion, asked that the jury be returned to the Courtroom. Later, during cross examination, defense counsel vainly tried to impeach Rivera by eliciting that he

had not, personally, made a report about the person who had identified the petitioner. Apparently, another detective did this. On redirect, the prosecutor showed Rivera a DD5 and had him reiterate that the petitioner had been identified as the shooter and his address provided at 4:15 pm. on June 9th. The prosecutor called another witness to the stand Detective Caballero. Admonishing her witness not to tell the jury where the information came from, the prosecutor elicited from Caballero that the petitioner had been identified as the shooter at 4:00 pm on June 9th, and that the police had also been given his address. The detective was also asked numerous questions about the police investigation and that he had relied on "people in the community" because it relayed to the shooting death of the victim. When asked the time period during which the police were searching for the petitioner he said from the 9th of June of 2006 until mid NOvember when the petitioner surrendered. Caballero was asked to explain how he knew that detective Rivera's interview of Carrasco was around 7 or 8 pm on june 9th as opposed to in the afternoon. He stated he knew time was of the essence in finding the killer and he could not authorize a manhunt until he was convinced, beyond a reasonable doubt, of the perpetrator's identity. The prosecutor asked if Caballero already had a suspect prior to detective Rivera ever meeting with Lenny Carrasco, over objection he answered "Yes". The prosecutor also asked Caballero whether Carrasco had provided firsthand knowledge of who shot Julio Montes the victim; over objection, Caballero said "yes". Over objections, she then elicited that Caballero had interviewed a man named Yanic Boras or Johnny Bora

(an individual not named before by Caballero), and that Mr. Bora had provided the detective firsthand knowledge of who shot Julio Montes on June 9th of 2006 and also asked if Bora had been cooperative since. Caballero said he had not; and the police had been unable to get Bora to testify. The prosecutor then had Caballero reiterate that he had subsequently interviewed Bora himself, and that Bora had given him firsthand knowledge of who shot Julio Montes. Bora spoke with Caballero and provided a narrative of what he saw. The prosecutor final question to Caballero was whether he had ever had another suspect besided the petitioner, He stated he had not.

[THIS SPACE WAS INTENTIONALLY LEFT BLANK]

PETITIONER WAS DENIED HIS UNITED STATES 6TH AND
14TH CONSTITUTIONAL AMENDMENT RIGHT TO CONFRONTATION
AND TO A FAIR TRIAL BY EVIDENCE THAT THE POLICE
HAD IDENTIFIED PETITIONER AS A "SPECIFIC SUSPECT"
HOURS BEFORE HE WAS IDENTIFIED BY PROSECUTION WITNESS
CARRASCO WAS INADMISSIBLE, EVEN AS "BACKGROUND"
EVIDENCE, BECAUSE IT CLEARLY SIGNALED THAT A
NON-TESTIFYING DECLARANT HAD IMPLICATED PETITIONER,
IN VIOLATION OF HIS RIGHT TO CONFRONT THIS ACCUSER,
AND WAS PARTICULARLY PREJUDICIAL IN THIS ONE WITNESS
IDENTIFICATION CASE.

The State Court's decision that petitioner's right to confrontation
was not violated was an unreasonable application of the facts, arbitrary
and an unreasonable application of clearly established federal law 28
U.S.C.A. § 2254 (d)(1).

Indeed in determining whether petitioner's right to confrontation
was violated, the State Court reasoned "when asked whether there came
a time on June 9, 2006 when the police began to look for a specific
suspect in relation to the death of Montez the subject detective merely
agreed that the police "beg[a]n specifically looking for [defendant]"
at 4:00 p.m. that afternoon without having "spoken to the [the
eyewitness]." "There is no basis to characterize that statement as
testimonial -- it simply is not an out-of-court substitute for trial
testimony... (People v. Garcia, 25 N.Y.3d 77[N.Y. 2015] The testimony
that more significantly violated petitioner's Constitutional right to
confrontation was, however, when the prosecutor elicited that Caballero
had interviewed a man named Yanic Boras or Johnny Bora and that Mr. Bora
had "provide[d] [the detective] firsthand knowledge of who shot June,
on June 9th of 2006". (T.T. 1226-27) Asked if Bora had been

"cooperative' since, Caballero said he had not; the police had been unable to get Bora to testify. (T.T. 1227) Later in the proceeding the prosecutor had Caballero reiterate that he had subsequently interviewed Bora himself, and that Bora had given him "firsthand knowledge of who shot Julio Montez". (T.T. 1243) Bora spoke with Caballero on June 13, 2006, and provided a narrative of what he saw. (T.T. 1245-46)

Morestill, during deliberation the jurors had asked for a readback of a portion of Caballero testimony namely, that Caballero had spoken with a man named Bora-- a "White-T's"-- who had provided "firsthand information about who the shooter was". This testimony should never have been allowed, it was hearsay in violation of Crawford and Petitioner's confrontation and due process rights, and it had not been invited by trial counsel's cross-examination. The Court declined to revisit its prior ruling and refused to strike this testimony from the readback. (T.T. 2170-72) Subsequently, the States highest Court neglected to give this prejudicial testimony due consideration on appeal, and concluded in error that petitioner's right to confrontation was not violated.

Morestill, Caballero was also led to state that he had interviewed "people in the community" which had yielded "helpful" information about the murder.

As a result of the content and quantity of the aforesaid prejudicial testimonies, the jurors could not possibly miss the point: Carrasco was not alone in accusing petitioner; Other people had also identified petitioner as the shooter and no one had implicated anyone

else. This "evidence" was inadmissible hearsay that violated petitioner's right to confront his accusers.

Although face to face confrontation forms the core of the confrontation clause's values, it is not an indispensable element of the confrontation right. see Maryland v. Craig, 497 U.S. 836; 110 S.Ct 3157(1990) The right to confront accusatory witnesses may be satisfied absent a physical, face to face confrontation at trial only where the denial of confrontation is necessary to further an important public policy and the testimony's reliablility is otherwise assured. see Maryland v. Craig, 497 U.S. 836; 110S.Ct. 3157(1990) Mere inconvenience to the witness is not sufficient to dispense with face to face confrontation.

Here, the reliability of Bora's prejudicial statement was never established, and the only reason for not having Bora testify "face to face" in Court was a desire not to inconvenience Bora.

When an out of Court statement is testimonial, the prosecution cannot avoid the confrontation bar by eliciting the prejudicial evidence indirectly, by inference. "[To] implicate the defendant's confrontation right, [a] statement need not have accused the defendant explicitly, but may contain an accusation that is only implicit". see Mendez v. Graham, 2012 WL 6594456 (E.D.N.Y.2012)

Among the most fundamental of procedural protections afforded a criminal defendant is the right to confront and cross-examine accusing witnesses. The right to confront and cross-examine witnesses and to call

witnesses in one's own behalf have long been recognized as essential to due process. see <u>Chambers v. Mississippi</u>, 410 U.S. 284; 93 S.Ct. 1038(1973) Indeed, the United States Supreme Court has repeatedly noted the near unanimity with which it has consistently expressed the belied that the right of confrontation and cross examination is an essential and fundamental requirement for the kind of fair trial which is this Country's Constitiutional goal. see <u>Barber v. Page</u>, 390 U.S. 719; 88 S.Ct. 1318(1968); <u>Crawford v. Washington</u>, 541 U.S. 36; 124 S.Ct. 1354(2004)

## INCONCLUSION

WHEREFORE PETITIONER'S CONVICTION SHOULD BE OVERTURNED, A NEW TRIAL ORDERED AND OR SUCH RELIEF THIS COURT DEEM JUST OR PROPER.


Dated: March 28, 2016.


Respectfully Submitted,

*Joshue DeJesus*
JOSHUE DEJESUS, PRO SE.


-10-

# EXHIBIT

APPELLATE DIVISION FIRST DEPARTMENT DECISION



Mazzarelli, J.P., Acosta, Renwick, Richter, Gische, JJ.

9751     The People of the State of New York,          Ind. 6141/06
                              Respondent,

                         -against-

          Joshue DeJesus,
                Defendant-Appellant.
          _____

Robert S. Dean, Center for Appellate Litigation, New York
(Abigail Everett of counsel), for appellant.

Cyrus R. Vance, Jr., District Attorney, New York (Alice Wiseman
of counsel), for respondent.
          _____

     Judgment, Supreme Court, New York County (Bruce Allen, J.),
rendered September 16, 2009, convicting defendant, after a jury
trial, of murder in the second degree, and sentencing him to a
term of 20 years to life, unanimously affirmed.

     Evidence concerning the course of the police investigation
of this homicide did not violate defendant's right of
confrontation.  Initially, we note that the prosecutor did not
actually introduce any testimonial statements by nontestifying
declarants.  Instead, defendant complains that the jury could
have misused certain police testimony as evidence that
nontestifying persons incriminated him.

     A detective's brief, limited testimony that defendant was
already a suspect at the time the People's main witness was
interviewed did not violate the Confrontation Clause.  This

43

evidence was not offered for its truth (*see Tennessee v Street*, 471 US 409 [1985]), but for the legitimate nonhearsay purposes of completing the narrative, explaining police actions, providing the context of the interview, correcting a misimpression created by defendant on cross-examination and preventing jury speculation (*see People v Tosca*, 98 NY2d 660 [2002]; *People v Rivera*, 96 NY2d 749 [2001]; *see also United States v Reyes*, 18 F3d 65, 70-71 [1994]). The probative value of this evidence for its nonhearsay purposes outweighed any prejudicial effect.

Defendant also claims that police testimony about obtaining information from other persons in the course of the investigation similarly violated his right of confrontation. However, due to its lack of specificity, this evidence presented little or no danger that the jury would draw an inference that these persons provided incriminating information. In any event, like the evidence of the point at which defendant became as suspect, this additional evidence was admissible for legitimate nonhearsay purposes, and its admission did not violate the Confrontation Clause.

Defendant did not preserve his claim that the court should have instructed the jury regarding the limited use of the evidence that was not received for its truth, and we decline to review it in the interest of justice. As an alternative holding,

44

we find that the absence of an instruction was harmless under all the circumstances of the case, including the limited prejudicial effect of the challenged evidence. Defendant's claim that trial counsel rendered ineffective assistance by not requesting such and instruction is improperly raised for the first time in a reply brief (*see e.g. People v Napolitano*, 282 AD2d 49, 53 [2001], *lv denied* 96 NY2d 866 [2001]). In any event, regardless of whether counsel should have requested the instruction, defendant has not established that the absence of the instruction resulted in prejudice under the state or federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]).

Defendant's mistrial motion was insufficient to preserve his claim that the prosecutor unfairly insinuated that defendant intimidated witnesses or potential witnesses, and we decline to review it in the interest of justice. As an alternative holding, we find that the comments and evidence challenged by defendant did not deprive him of a fair trial. The evidence challenged by defendant was relevant to issues raised at trial. Furthermore, defendant's recorded conversations permitted a reasonable inference that he was involved in witness intimidation.

Defendant's pro se claim about prosecutorial vouching in summation is without merit. Defendant did not preserve any of

45

his other pro se claims, or any of the other challenges to the prosecutor's summation raised in defendant's main brief, or his challenge to police testimony that allegedly expressed an opinion on the main witness's reliability, and we decline to review these claims in the interest of justice. As an alternative holding, we reject them on the merits.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: APRIL 9, 2013

_____
CLERK

46

# EXHIBIT

N.Y.S. COURT OF APPEAL DECISION GRANTED: APRIL 2, 2014.

N.Y.S. COURT OF APPEAL DICISION AFFIRMED: MARCH 31, 2015.



Citation/Title
986 N.Y.S.2d 418, 22 N.Y.3d 1198, People v. DeJesus, (N.Y. 2014)

**\*418** 986 N.Y.S.2d 418

22 N.Y.3d 1198, 9 N.E.3d 913

(The decision of the Court of Appeals of New York is referenced in the North Eastern Reporter and New York Supplement in a table entitled "Applications for Leave to Appeal - Criminal.")

Court of Appeals of New York

**People**
**v.**
**Joshue DeJesus**
April 02, 2014

1st Dept.: 105 A.D.3d 476, 963 N.Y.S.2d 91 (NY)

Rivera, J.

Granted.

© 2015 Thomson Reuters. No claim to original U.S. Govt. works.

# State of New York
# Court of Appeals

*Remittitur*

HON. JONATHAN LIPPMAN, *Chief Judge presiding.*

No. 41

The People &c.,

      Respondent,

    v.

Joshue DeJesus,

      Appellant.



Appellant in the above entitled appeal appeared by Robert S. Dean, Esq., Center for Appellate Litigation; respondent appeared by the Hon. Cyrus R. Vance, Jr., District Attorney, New York County.

The Court, after due deliberation, orders and adjudges that the order is affirmed. Opinion by Judge Fahey. Chief Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam and Stein concur.

The Court further orders that this record of the proceedings in this Court be remitted to Supreme Court, New York County, there to be proceeded upon according to law.

I certify that the preceding contains a correct record of the proceedings in this appeal in the Court of Appeals and that the papers required to be filed are attached.

John P. Asiello, Deputy Clerk

Court of Appeals, Clerk's Office, Albany, March 31, 2015

# State of New York
# Court of Appeals

No. 40
The People &c.,
                    Respondent,
          v.
Richard Garcia,
                    Appellant.
- - - - - - - - - - - - - - - - - - - - -
No. 41
The People &c.,
                    Respondent,
          v.
Joshue DeJesus,
                    Appellant.

# OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

Case No. 40:
          Amanda Rolat, for appellant.
          David P. Johnson, for respondent.

Case No. 41:
          Abigail Everett, for appellant.
          Alice Wiseman, for respondent.

FAHEY, J.:

          From these otherwise unrelated criminal appeals arises
the question whether the introduction of purported "background
and narrative" evidence through the testimony of police
detectives violated defendants' right to confrontation.

- 1 -

### People v Garcia

At approximately 8:30 p.m. on August 20, 2005, Michael
Colon was shot to death following a streetside argument.  With
respect to that incident defendant was charged by indictment
with, inter alia, one count each of murder in the second degree
(Penal Law § 125.25 [1]) and manslaughter in the first degree (§
125.20 [1]).

Although there were approximately 15 people in the area
of the argument, only one eyewitness testified at the ensuing
jury trial.  On direct examination the eyewitness recalled that,
during an argument he was having with Colon, defendant pointed a
gun at Colon and fired three to four shots at him.  The
eyewitness ran to her automobile after the first shot was fired
but, in the meantime, she observed that Colon had grabbed his
chest and fallen to the "floor."  The eyewitness acknowledged
that she was contacted by the police nearly two years after the
shooting, on June 19, 2007.  On that date the eyewitness
identified defendant as the shooter in a lineup.

The lineup was the second police attempt to have the
eyewitness identify the shooter.  Cross-examination revealed
that, a few days after the shooting, the eyewitness went to a
precinct house, whereupon police showed her a photo array.  The
eyewitness did not identify defendant's photograph in that array,
and she explained that "in the pictures" defendant "looked
different" from how he appeared in person.  The eyewitness stated
that she declined to identify the shooter because she was "more

comfortable seeing . . . the person in person because in the
picture they looked different," and she was fearful of
identifying the wrong person.

The People's case turned to the police investigation of
the shooting and the testimony of the lead detective.  The
detective initially noted that the police did not make an arrest
in 2005 or 2006.  He then described an August 21, 2005 meeting he
had with Colon's sister.  Over defendant's general objection, the
prosecutor engaged the detective in this exchange:

>"Q.  And without telling us
>specifically what you talked about, . . . did
>[Colon's sister] assist you in your
>investigation of this case?
>
>"A.  Yes, she did.
>
>"Q.  And did she tell you whether
>[Colon] was having a problem with anyone in
>particular?
>
>"A.  Yes, she did.
>
>"Q.  Who was that?
>
>* * *
>
>"A.  [Defendant]."

The detective further testified that Colon's sister had
also told him that defendant and Colon had known each other for
"quite awhile."  Defendant objected that "[w]e don't have that
witness here."  The court overruled the objection.  That
testimony preceded the detective's explanation of the police
investigation of the shooting, which culminated in the arrest of

defendant on June 19, 2007.

The People's case established that Colon was killed by
a single gunshot.  The People, however, had neither the gun at
issue nor any physical evidence linking defendant to the
shooting.  Consequently, their case hinged on the eyewitness's
identification of the shooter and the hearsay testimony of the
detective as to the reported strife between Colon and defendant.
At a charge conference the court denied defendant's motion
seeking either the striking of the detective's testimony as to
conflict between defendant and Colon or, in the alternative, the
delivery of an instruction directing the jury to disregard that
testimony on the ground that it was "pure hearsay."  The jury
convicted defendant of manslaughter in the first degree (Penal
Law § 125.20 [1]).

On appeal, the Appellate Division declined to disturb
the conviction, concluding, in relevant part, that defendant's
objection to the disputed parts of the detective's testimony "did
not preserve [defendant's] Confrontation Clause claim" and, in
the alternative, that there was "no Confrontation Clause
violation[] because the evidence was admissible for a legitimate
purpose other than its truth" (113 AD3d 553, 554 [2014]).  After
acknowledging that the trial court should have given a limiting
instruction with respect to the disputed testimony, the Appellate
Division also concluded that "any error in receiving the evidence
or in failing to deliver [such an] instruction was harmless,

because neither the evidence nor the absence of an instruction could have affected the verdict" (id.).  A Judge of this Court granted leave to appeal (22 NY3d 1198 [2014]).  We now reverse and order a new trial.

### *People v DeJesus*

During the early morning hours of June 9, 2006, Julio Montez was shot to death following a dispute outside a neighborhood bar.  Defendant was charged by indictment with one count of murder in the second degree (Penal Law § 125.25 [1]).

At pretrial motion in limine the People sought to introduce evidence that Montez's family had called the police 12 hours after the shooting to report their receipt of an anonymous phone call identifying the shooter as a person named "Joshua" who lived with his grandparents at a certain Manhattan address. According to the prosecutor, that information was relevant not for the truth of the matter asserted, but to show "why the police focused in on . . . defendant and how they came to put his photo in a photo array, how they came to show it to witnesses, [and how] defendant was a suspect from the day the actual homicide took place."  Following defendant's point that such evidence would be purely prejudicial, the court ruled that the prosecutor could ask, "based on your investigation on that day, did you have a suspect in mind," without mention of the subject phone call.

The matter subsequently proceeded to a jury trial where, similar to Garcia, the identification of defendant as the

shooter was premised upon the testimony of a single eyewitness.
In this case, that eyewitness, a longtime friend of Montez,
testified as to having frequently seen defendant "hanging out" in
the neighborhood in which Montez, the eyewitness, and defendant
lived.  He also saw defendant shoot Montez following the tavern
quarrel.  The shooting occurred at approximately 3:45 a.m. on
June 9, 2006.  The eyewitness called 911 for medical and police
assistance.  Montez died at a hospital approximately two hours
later.

A police detective obtained a list of the telephone
numbers that were used to call 911 concerning the shooting.
Using the list, that detective contacted the eyewitness at about
4:50 a.m. on the morning of the shooting.  At that point, the
frightened eyewitness did not want to be "involved" in the
matter.  He told the detective that he did not see the shooting
and made no mention of defendant's presence at the scene of that
incident.

At least two more detectives became involved in the
investigation of the shooting later that morning, and one of
those detectives eventually interviewed the eyewitness at
approximately 7:00 p.m. on the evening of that incident.  At that
juncture the eyewitness gave a physical description of the
shooter and indicated that he could identify the shooter, whom he
recognized from the neighborhood.  Then, at approximately 10:00
p.m. that evening, the eyewitness was shown a photo array from

which he identified defendant as the shooter.

The means by which the police identified defendant as a suspect are at the core of our inquiry here. Over defendant's objection, the detective who conducted the 7:00 p.m. interview testified in this colloquy that he began to look for defendant at 4:00 p.m. on the afternoon of the shooting as a result of that detective's investigatory work and without having spoken to the eyewitness:

> "Q. Did there come a time . . . on June 9th of 2006 that you were looking for a specific suspect relating to the shooting death of [Montez]?
>
> * * *
>
> "A. Yes . . . ."

> "Q. And what was the name of the person you were looking for?
>
> * * *
>
> "A. [Defendant].
>
> * * *

> "Q. And I may have asked you this: What time on June 9th did you begin specifically looking for a person by the name of [defendant]?
>
> * * *
>
> "A. 4:00 P.M.

> "Q. And without telling us specifically, was that as a result of your investigation that you began looking for . . . defendant . . .?
>
> "A. Yes . . . .

"Q.   And at the point that you had
a specific suspect that you were looking for
in connection with the shooting [death] of
[Montez], had you spoken to [the eyewitness]?

"A.   No . . . ."

Defendant later moved for a mistrial based on the
foregoing testimony, contending that it violated his right to
confrontation insofar as it amounted to an unsworn statement from
an anonymous source identifying defendant as the shooter.  The
court ultimately denied the motion, and by then the jury had
returned a verdict convicting defendant of murder in the second
degree (Penal Law § 125.25 [1]).

The Appellate Division affirmed, concluding, inter
alia, that the "brief, limited testimony that defendant was
already a suspect at the time the [eye]witness was interviewed
did not violate the Confrontation Clause" inasmuch as that
"evidence was offered not for its truth, but for the legitimate
nonhearsay purposes of[, inter alia,] completing the narrative,
explaining police actions, providing the context of the [police]
interview [of the eyewitness], . . . and preventing jury
speculation" (105 AD3d 476, 476 [2013] [internal citation
omitted]).  A Judge of this Court granted leave to appeal (22
NY3d 1198 [2014]).  We now affirm.

*Analysis*

I.

"Under the Sixth Amendment of the Federal Constitution
and article I, § 6 of the State Constitution, a criminal

defendant has the right to be confronted with the witnesses
against him or her (see US Const Amend VI; NY Const, art I, § 6;
Delaware v Van Arsdall, 475 US 673, 678 [1986]; People v Rawlins,
10 NY3d 136, 146 [2008])" (People v Smart, 23 NY3d 213, 219
[2014]).  Indeed, the federal Confrontation Clause bars
"admission of testimonial statements of a witness who did not
appear at trial," unless that witness was unavailable to testify
and the defendant had a prior opportunity to cross-examine him or
her (Crawford v Washington, 541 US 36, 53-54 [2004]; see People v
Pealer, 20 NY3d 447, 453 [2013], cert denied ___ US ___, 134 S Ct
105 [2013]).  "[A] statement will be treated as testimonial only
if it was 'procured with a primary purpose of creating an out-of-
court substitute for trial testimony' " (id., quoting Michigan v
Bryant, 562 US 344, ___, 131 S Ct 1143, 1155 [2011]) and, "[i]f a
different purpose underlies its creation, the issue of
admissibility of the statement is subject to federal or state
rules of evidence" (Pealer, 20 NY3d at 453).  Our precedent
teaches that "two factors . . . are 'especially important' in
resolving whether to designate a statement as testimonial---
'first, whether the statement was prepared in a manner resembling
ex parte examination and second, whether the statement accuses
defendant of criminal wrongdoing' " (id., quoting People v
Rawlins, 10 NY3d 136, 156 [2008], cert denied sub nom Meekins v
New York, 557 US 934 [2009]).  "[T]he 'purpose of making or
generating the statement, and the declarant's motive for doing

so,' also 'inform [those] two interrelated touchstones' "
(<u>Pealer</u>, 20 NY3d at 453, quoting <u>Rawlins</u>, 10 NY3d at 156).

But this is not to say that testimonial statements are
invariably intolerable at trial.  The federal Confrontation
Clause "does not bar the use of testimonial statements for
purposes other than establishing the truth of the matter
asserted" (<u>Crawford</u>, 541 US at 59 n 9, citing <u>Tennessee v Street</u>,
471 US 409, 414 [1985]).[1]  Moreover, subject to the exercise of a
court's discretion, otherwise inadmissible evidence that
"provide[s] background information as to how and why the police
pursued and confronted [a] defendant" (<u>People v Tosca</u>, 98 NY2d
660, 661 [2002]) may be admitted to help a jury understand a case
in context "if the evidence's probative value in explaining the
[pursuit] outweighs any undue prejudice to the defendant," and if
the evidence is accompanied by a " 'proper limiting
instruction[]' " (<u>People v Morris</u>, 21 NY3d 588, 596 [2013],
<u>quoting</u> <u>People v Resek</u>, 3 NY3d 385, 389 [2004]).  We now apply
those principles to the facts before us.

---

[1]   <u>Crawford</u> interpreted the federal Confrontation Clause,
but the federal and state Confrontation Clauses are "virtually
identical" (<u>People v Bradley</u>, 8 NY3d 124, 126 [2006]).  The
federal clause states that "[i]n all criminal prosecutions, the
accused shall enjoy the right . . . to be confronted with the
witnesses against him" (US Const Amend VI), while the state
clause provides that "[i]n any trial in any court whatever the
party accused shall . . . be confronted with the witnesses
against him or her" (NY Const, art I, § 6).

II.

Garcia's contention with respect to the alleged violation of his confrontation rights is preserved for our review (see CPL 470.05 [2]), and it has merit.[2]  In Garcia, the detective's testimony as to his conversation with Colon's sister went beyond the permissible bounds of "provid[ing] background information as to how and why the police pursued . . . defendant" (Tosca, 98 NY2d at 661).  The detective's remark that Colon's sister had said that there was friction between defendant and Colon indisputably was a testimonial statement inasmuch as it was procured for the primary purpose of creating an out-of-court substitute for the testimony of Colon's sister regarding that discord (see generally Pealer, 20 NY3d at 453).  The testimony as to that friction, which arguably gave a motive for the shooting, exceeded that which was necessary to explain the police pursuit of defendant.  It should not have been countenanced by the trial court.  Inasmuch as Garcia turned on the identification of defendant by a single eyewitness, who was not well-acquainted with defendant and who did not identify him until two years after the crime, we cannot conclude that the error in admitting that testimony in evidence is harmless (see generally People v Eastman, 85 NY2d 265, 277-278 [1995]; cf. People v Kello, 96 NY2d 740, 744 [2011]).

----

[2]      We note that, even if defendant's constitutional contention is unpreserved, as the People suggest, we would reach the same result with respect to the merits based on our state evidentiary hearsay rules.

Even assuming, arguendo, the detective's statements as
to the discord between defendant and Colon merely provided
background as to the police pursuit of defendant and were
properly admitted in evidence for that purpose, reversal would
still be required.  It is obvious, if not uncontested, that the
subject testimony should have been tempered by a " 'a proper
limiting instruction[]' " (Morris, 21 NY3d at 596, quoting Resek,
3 NY3d at 389).  In the absence of a curative instruction the
prosecutor offered what we characterize here as a curative
argument on summation.  Specifically, the prosecutor contended
that the detective's testimony as to what Colon's sister had said
that Colon had told her was not "introduced for the truth of the
matter asserted."  That argument, however, is no substitute for a
proper curative or limiting charge inasmuch as " '[a]rguments of
counsel cannot substitute for instructions by the court' "
(Carter v Kentucky, 450 US 288, 304 [1981], quoting Taylor v
Kentucky, 436 US 478, 489 [1978]).

In any event, under the circumstances of this case, the
failure to temper that testimonial evidence with a proper
curative instruction is not harmless even under the standard
applicable to non-constitutional harmless error (see generally
People v Crimmins, 36 NY2d 230, 241-242 [1975]).[3]

------

[3]   Garcia also contends that the evidence is legally
insufficient to support his conviction, but that contention is
not preserved for our review (see People v Gray, 86 NY2d 10, 19
[1995]).

III.

People v DeJesus presents different circumstances.
There, when asked whether there came a time on June 9, 2006 when
the police began to look for a specific suspect in relation to
the death of Montez, the subject detective merely agreed that the
police "beg[a]n specifically looking for [defendant]" at 4:00
p.m. that afternoon without having "spoken to [the eyewitness]."
There is no basis to characterize that statement as testimonial--
-it simply is not an out-of-court substitute for trial testimony
(see Pealer, 20 NY3d at 453). We thus conclude that there is no
merit to defendant's contention that his confrontation rights
were violated.[4]

Further, we conclude that DeJesus is not a case in
which there was an inferential breach of defendant's
confrontation rights. The United States Court of Appeals for the
Second Circuit has ruled that "[t]he relevant question [in
determining whether testimony contains an implicit accusation and
thus is testimonial] is whether the way the prosecutor solicited
the testimony made the source and content of the conversation
clear" (Ryan v Miller, 303 F3d 231, 250 [2d Cir 2002]; see United
States v Dukagjini, 326 F3d 45, 56-57 [2d Cir 2003]). Even
assuming, arguendo, that the Ryan litmus test applies here, we

---

[4]    In so concluding, we note that, as we read the record
and his main brief, defendant articulated on appeal contentions
with respect to both the federal and state Confrontation Clauses
that are preserved for our review (see CPL 470.05 [2]).

conclude that there was no violation of defendant's confrontation
rights.  Defense counsel's point at trial that the disputed
testimony gave the "clear implication" that "some unknown
anonymous caller said that [defendant] must have been the
suspect" is mere supposition.  Moreover, defendant's reiteration
on appeal of his point at trial that the subject evidence
"clearly stands for the proposition [that] somebody told [the
detective] to look for [defendant] because [defendant] was the
shooter before someone spoke to [the eyewitness]" is similarly
misplaced.

     Accordingly, the order of the Appellate Division in
People v Garcia should be reversed and a new trial ordered, and
the order of the Appellate Division in People v DeJesus should be
affirmed.

PIGOTT, J. (concurring) :

      I disagree with my colleagues in <u>People v Garcia</u> to the extent that they hold that the trial court erred, as a matter of law, in admitting the detective's testimony regarding his conversation with Colon's sister.

      The detective's testimony, which did not go into any of the specific details of his conversation with Ms. Colon, was necessary to explain to the jury how the detective came to focus on defendant during his nearly two-year investigation (<u>see</u> <u>People v Till</u>, 87 NY2d 835, 837 [1995]). Under certain circumstances, and when coupled with proper limiting instructions, testimony of this kind may fill in gaps of "interwoven events" (<u>id.</u>) and thus, help the jury understand the case in context.

      Without the detective's very brief testimony of Ms. Colon's account that there was a "problem" between defendant and Mr. Colon, there would have been no explanation for why the detective included defendant in the initial photo array or spent two years looking for him. The jury would have been left to speculate over an obvious gap in the narrative.

      I agree, as both defense counsel and the prosecutor requested, that a limiting instruction should have been given to

explain the testimony's limited purpose.  As my colleagues

recognize, the testimony arguably suggested to the jury a motive

for the shooting and the court's failure to give that limiting

instruction was not harmless.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

For Case No. 40:  Order reversed and a new trial ordered.
Opinion by Judge Fahey.  Chief Judge Lippman and Judges Rivera,
Abdus-Salaam and Stein concur.  Judge Pigott concurs in result in
a separate opinion in which Judge Read concurs.

For Case No. 41:  Order affirmed.  Opinion by Judge Fahey.  Chief
Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam and
Stein concur.

Decided March 31, 2015



*State of New York*
*Court of Appeals*

Andrew W. Klein
Chief Clerk and
Legal Counsel to the Court

Clerk's Office
20 Eagle Street
Albany, New York 12207-1095

cided March 31, 2015

), 41

e People &c.,
　　　Respondent,

　　v.

;hue DeJesus,
　　　Appellant.

Order affirmed.
Opinion by Judge Fahey.
Chief Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam and Stein concur.